Case 1:22-cv-03005-EFS    ECF No. 18    filed 12/29/22    PageID.873    Page 1 of 18

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 29, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KELLIE L.,[1]

                Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

                Defendant.

No.   4:22-cv-3005-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS**

      Plaintiff Kellie L. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the record lacks substantial evidence to support the ALJ's medium-work residual functional capacity (RFC), this matter is remanded for further proceedings.

## I.    Five-Step Disability Determination

      A five-step evaluation determines whether a claimant is disabled. Step one assesses whether the claimant is engaged in substantial gainful activity.[2] Step two

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial, as claimant, or as Plaintiff. *See* LCivR 5.2(c).

[2] 20 C.F.R. § 416.920(a)(4)(i), (b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[3] Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[4] Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[5] Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[6]

## II.  Background

In 2019, when Plaintiff was 57, she filed a Title 16 application[7] alleging disability because of chronic pain in her joints, fibromyalgia, chronic migraines, agoraphobia, panic attacks, posttraumatic stress disorder (PTSD), anxiety attacks,

---

[3] 20 C.F.R. § 416.920(a)(4)(ii), (c).

[4] *Id.* § 416.920(a)(4)(iii), (d).

[5] *Id.* §, 416.920(a)(4)(iv).

[6] *Id.* § 416.920(a)(4)(v), (g).

[7] Plaintiff previously filed Title 2 and 16 disability applications in February 2016. The prior applications were denied, with the ALJ's denial upheld by the district court. AR 75–96; EDWA Case No. 1:19-cv-3091-FVS.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

and sciatic pain.[8] After the agency denied her application initially and on reconsideration, Plaintiff requested a hearing before an ALJ.[9]

In December 2020, ALJ Glenn Meyers held a telephonic hearing, during which Plaintiff and a vocational expert testified.[10] Plaintiff testified that she cries often, gets nervous around people, and has such bad anxiety that she puts on glasses and a hat to walk to the mailbox and she goes grocery shopping at times that she believes less people will be present.[11] She believes she began experiencing her mental-health symptoms after her mom died, and she experiences hallucinations at night in which she sees her mom or other dead family members.[12] Plaintiff reported a short attention span that does not allow her to watch a 2-hour movie without taking breaks, that she has been taking opiate-based pain medications for a long time, and that working fulltime would hurt her back.[13]

After the hearing, the ALJ denied Plaintiff's disability application.[14] As to the sequential disability analysis, the ALJ found:

---

[8] AR 209–14, 254.

[9] AR 131–55.

[10] AR 38–74.

[11] AR 57, 59, 68.

[12] AR 58–59.

[13] AR 50–51, 62, 64.

[14] AR–33.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

- Step one: Plaintiff had not engaged in substantial gainful activity since May 20, 2019, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease (DDD; lumbar and cervical), depressive disorder, anxiety disorder, personality disorder, and PTSD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform medium work with the following limitations:

  > she can frequently balance, stoop, kneel, and crouch; she can never crawl or climb; she must avoid concentrated exposure to hazards and vibration; she can perform simple routine tasks and follow short simple instructions; she can do work that needs little or no judgment; she can perform simple duties that can be learned on the job in a short period; she requires a work environment that is predictable and with few setting changes; she can work in proximity to coworkers but not in a cooperative or team effort; she requires a work environment that has no more than superficial interactions with coworkers; she requires a work environment without public contact; and requires a work environ[ment] with occasional supervisor contact.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

numbers in the national economy, such as janitor, laundry worker, and hand packager.[15]

In reaching his decision, the ALJ found the examining opinions of Kent Reade, Ph.D., and Patrick Metoyer, Ph.D., unpersuasive, and the reviewing opinions of JD Fitterer, M.D., and Howard Platter, M.D., unpersuasive.[16] The ALJ also mentioned that he found Gary Nelson, Ph.D.'s examining opinion unpersuasive but in discussing Dr. Nelson's opinion mistakenly referred to Dr. Fitterer and Dr. Platter instead of Dr. Nelson.[17] The ALJ also mentioned a largely blank Physical Functional Evaluation form that was not completed by treating provider Angela Bosma, PA-C.[18] And the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence.[19]

---

[15] AR 15–29.

[16] AR 25–26.

[17] AR 25.

[18] AR 26–27, 637–39.

[19] AR 20–25.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[20] Plaintiff timely appealed to the Court.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[21] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[22] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[23] Because it is the role of the ALJ to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[24] Further, the

---

[20] AR 1–6.

[21] 42 U.S.C. § 405(g).

[22] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[23] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[24] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination."[25]

### IV. Analysis

**A.** ***Chavez*'s presumption of continuing nondisability does not apply.**

The Commissioner argues that the prior unfavorable ALJ decision from 2018 creates a presumption of continuing non-disability that supports ALJ Meyer's at-issue RFC, particularly as to the medium-work limitation. However, ALJ Meyers stated and found:

> The prior unfavorable May 29, 2018 decision creates a presumption of continuing non-disability (*Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988); Acquiescence Ruling 97–499). I find that the presumption is rebutted because the mental regulations have changed.

The ALJ then analyzed anew Plaintiff's mental *and* physical impairments.

The presumption of continuing nondisability was rebutted as to all aspects of the prior RFC, including the medium-work assessment. Therefore, given the ALJ's broad rebutted-presumption finding and new analysis as to all of Plaintiff's impairments, the Court may not limit the ALJ's finding such that the presumption was rebutted to only the nonexertional-RFC limitations, as the Commissioner proposes.

**B.     The medium-work RFC is not supported by substantial evidence.**

Plaintiff argues the medium-work RFC is not supported by substantial evidence because the ALJ committed error when analyzing the physical medical

---

[25] *Molina*, 674 F.3d at 1115 (cleaned up).

opinions and by failing to develop the record. The Court agrees—the medium-work RFC is not supported by substantial evidence.

    1.    <u>Dr. Fitterer and Dr. Platter</u>

The only completed medical opinions pertaining to Plaintiff's physical functioning were reviewing opinions by Dr. Fitterer and Dr. Platter. In 2019, on the initial Disability Determination Explanation, Dr. Fitterer found that Plaintiff had severe DDD (disorders of the back, discogenic and degenerative) and obesity.[26] Dr. Fitterer also stated:

> The current medical evidence is inadequate to assess the current nature and severity of claimant's impairments. Claimant failed to attend consultative exams despite the assistance of counsel. The evidence is insufficient due to lack of cooperation. These findings complete the medical portion of the disability determination.[27]

Dr. Fitterer stated that a physical consultative examination (CE) was required.[28]

---

[26] AR 111.

[27] AR 111. *See also* Program Operations Manual System (POMS) DI 23007.015 (When assessing the RFC, the consultant is to "[o]nly impose limitations supported by the evidence in the file. When the evidence does not support any limitations, do not assess any. The consultant must indicate in the RFC that the evidence in the file is insufficient to rate limitations on a particular impairment, symptoms, or alleged limitations because the evidence necessary for a full medical evaluation is not available.").

[28] AR 109.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

The initial Disability Determination Explanation also summarized the contacts between the agency and Plaintiff as to scheduling and attending the previously scheduled CEs.[29] This summary indicated that an agency representative spoke with Plaintiff about the CE process and later confirmed that Plaintiff would attend the CE and did not need a ride.[30] When the agency called to again confirm the CE, Plaintiff said she "was ill and unable to attend the exam" and requested that the CE be rescheduled.[31] Later Plaintiff confirmed she would attend the rescheduled CE on August 1, 2019, but on the day of the CE, she called the agency and reported that "her anxiety was too high to attend the exam."[32] The agency noted, "Unfortunately, this is the second broken exam and insufficient reason to reschedule."[33]

Following issuance of Dr. Fitterer's opinion, and before Dr. Platter reviewed the record, another CE was scheduled for December 5, 2019. The record reflects that Plaintiff was a "no show" for that CE.[34]

---

[29] AR 110.

[30] AR 110.

[31] AR 110.

[32] AR 110, 309.

[33] AR 110.

[34] AR 357.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

In January 2020, on the reconsideration Disability Determination Explanation (referred to as "Reconsideration Explanation"), Dr. Platter agreed that Plaintiff had severe physical impairments of DDD and obesity and that the evidence as to Plaintiff's physical impairments was not sufficient to support a decision on the disability claim.[35] This insufficiency of the evidence was due in part to Plaintiff forgetting to attend the physical CE (PCE) scheduled and confirmed for December 5. The Reconsideration Explanation stated that this excuse was "[n]ot considered good cause for reschedule since confirmation was provided."[36] The Analysis section of the Reconsideration Explanation repeats that Plaintiff:

> was scheduled to attend a PCE, confirmed by rep that clmt would attend exam and then failed PCE stating she forgot, not good cause for reschedule of physical exam. Overall evidence in file insufficient based on inability to assess physical impairments and how they impact her functioning.[37]

The Reconsideration Explanation also mentions that Plaintiff drove herself to her psychological CE with Dr. Metoyer on January 20, 2020.[38]

These were the only medical statements pertaining to Plaintiff's physical functioning. Although the record contains a Physical Functional Evaluation form with the name and contact information for Plaintiff's primary care provider,

---

[35] AR 121, 123.

[36] AR 121–22.

[37] AR 122–23.

[38] AR 122.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

PA-C Bosma, this form is otherwise blank.[39]

2.   Analysis as to Medium-Work RFC

Like Dr. Fitterer and Dr. Platter, the ALJ found that Plaintiff had a severe impairment of DDD (lumbar and cervical).[40] However, the ALJ found unpersuasive Dr. Fitterer's and Dr. Platter's opinions that a determination could not be made as to Plaintiff's physical functioning because 1) the doctors did not have an opportunity to examine Plaintiff or review the updated record, and 2):

> there is sufficient evidence to evaluate the claim to include, for example, largely normal findings on physical examinations such as a full range of motion in her musculoskeletal system, a normal unremarkable back, and a normal gait; the claimant's generally benign presentation; and evidence that treatment has been effective or does not cause unpleasant side effects.[41]

The ALJ then interpreted the medical evidence as permitting Plaintiff to perform medium work with postural limitations.[42]

---

[39] The ALJ stated, "In June 2020, Angela Bosma, M.D., a treating provider, signed a physical function evaluation. However, the submitted form was not completed, and it did not otherwise identify any limitations." AR 26. This form, however, does not contain PA-C Bosma's signature but rather simply contains basic contact information.

[40] AR 18.

[41] AR 25.

[42] AR 19.

1
2
3
4
  Plaintiff argues that because there was no medical opinion indicating she had the functional ability to perform medium work, the ALJ was "playing doctor" by crafting an RFC based simply on interpreting raw medical data rather than assessing whether opined medical limitations were supported by the record.[43]

5
6
  It is the ALJ's responsibility to translate and incorporate "clinical findings into a succinct RFC."[44] The regulation regarding an RFC determination provides:

7
8
9
10
11
12
> We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. We will also consider descriptions and observations of your limitations from your

---

[43] ECF No. 11 (relying on *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)).

[44] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005–06 (9th Cir. 2015) (analyzing whether the ALJ properly incorporated specific "imperatives" about the claimant's limitations rather than mere recommendations); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174–75 (9th Cir. 2008) (discussing whether the ALJ properly incorporated the limited identified by the physicians); *see also* Social Sec. Rlg. (SSR) 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing RFC in Initial Claims.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.[45]

Per this regulation, an ALJ is not only permitted to, but is required to, consider information contained in medical records—beyond the medical opinions themselves—when crafting a claimant's RFC. Part of that process includes considering medical-source statements about what a claimant can do, but the regulation does not specify that a medical-source statement is always required. Nonetheless, the regulation requires the agency to develop the claimant's "complete medical history" and to make "every reasonable effort to help . . . get medical reports from [claimant's] medical sources" before the ALJ determines that a claimant is not disabled.[46]

Here, two medical sources opined that the medical record was not sufficient to opine as to Plaintiff's exertional functional abilities. The agency did schedule three physical CEs and communicated with Plaintiff about these CEs. Yet, Plaintiff was unable to attend one because she was ill, another because her anxiety was too high, and the last because she forgot about it.

---

[45] 20 C.F.R. § 416.945(a)(3) (internal citations omitted). *See also* SSR 16-3p ("We consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record.").

[46] 20 C.F.R. § 416.945(a)(3).

The regulations provide that if a claimant does not have a good reason for failing to take part in a CE, that the Commissioner may find that the claimant is not disabled.[47] The regulations and the POMS identify some "good reason" examples, including illness and mental limitations.[48] Here, the ALJ did not mention that physical CEs were scheduled or that Plaintiff did not appear for the physical CEs; therefore, the ALJ did not discuss whether Plaintiff had good cause for failure to appear and, resultantly, the ALJ did not deny disability on the basis for failure to appear at the CEs. Instead, the ALJ proceeded with the sequential evaluation, as permitted by POMS DI 23007.015.[49]

However, there is no indication in the record that the agency followed up to obtain PA-C Bosma's medical opinion, as is required by 20 C.F.R. § 416.945(a)(3)'s directive that steps be taken by the agency to obtain medical-source statements from a treating provider. Before concluding that Plaintiff was not disabled, the

---

[47] 20 C.F.R. § 416.918(a).

[48] 20 C.F.R. § 416.918(b); POMS DI 23007.001.

[49] POMS DI 23007.015 (When the agency has "made reasonable, but unsuccessful effort to obtain the claimant's cooperation to comply with a request for evidence or action, or to confirm or attend a consultative examination (CE) appointment, make a determination based on the evidence in file using the sequential evaluation process.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

agency should have followed up with obtaining a completed Physical Functional Evaluation from PA-C Bosma.[50]

This record therefore lacks any medical-source statement as to Plaintiff's lifting, standing, sitting, walking, and postural abilities. Yet, notwithstanding the lack of a medical-source statement offering such, the ALJ found that Plaintiff, who was 57-years old or older during the relevant period, could perform medium work, i.e., lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds and standing or walking, off and on, for a total of about 6 hours each workday, as well as frequent balancing, stooping, kneeling, and crouching.[51] The ALJ based this finding on the underlying medical records which generally noted full range of motion and normal gait. But when reviewing the medical records, both Dr. Fitterer and Dr. Platter found the record insufficient to

---

[50] Before assessing that there is insufficient medical evidence, the Commissioner is to make an initial request for medical records from the claimant's own medical sources and to make a follow-up request within a certain number of days after the initial request "if we do not receive the evidence." POMS DI 22505.001; *see also Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (The "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.); POMS DI 22505.035 (recognizing that the duty to develop the record applies at all levels of adjudication).

[51] 20 C.F.R. § 416.967(c); SSR 83-10.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

allow a determination as to Plaintiff's functional abilities. After all, those same records also showed that Plaintiff had a severe impairment of DDD of the lumbar and cervical back, was obese, received an injection for neck pain, and was regularly prescribed medication for back pain and spasms.[52]

The ALJ fails to adequately explain how he—and not the physicians—were able to determine from the medical records that Plaintiff could perform medium work. Without an adequate bridge between the medical records and the medium-work RFC, the ALJ's medium-work RFC is based on speculative inferences rather than substantial evidence.[53] And the ALJ's unsupported finding that Plaintiff could perform medium work consequentially impacted the nondisability decision because, if Plaintiff is limited to light work, she will be considered disabled given her Advanced Age category.[54]

As remand is necessary on this basis, the Court need not analyze Plaintiff's remaining claims.

---

[52] *See, e.g.*, AR 745 (Apr. 2020: Toradol injection for neck pain), AR 358–520, 649–781 (records relating to prescribed opiates for back pain).

[53] *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (requiring the ALJ to consider both the evidence that supports and the evidence that detracts from a medical opinion).

[54] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Medical-Vocational Rule 202.06 (light work).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

**C.    Remand is required for further proceedings.**

Plaintiff argues that remand for benefits is justified.[55] However, further administrative proceedings are needed to fully develop the record.[56] On remand, in additional to requesting a functional evaluation from PA-C Bosma, the ALJ is to order physical and psychological CEs, as it has been more than 2 years since the last psychological CE and there is no physical CE. The consultative examiners must be given sufficient medical records to allow for a longitudinal perspective since May 20, 2019.[57] If Plaintiff fails to attend one or both examinations, the ALJ is to address whether Plaintiff had good cause for failing to attend. If Plaintiff again fails to attend a physical CE and no opinion is submitted by PA-C Bosma, the ALJ is encouraged to call a medical expert to offer an opinion as to Plaintiff's

---

[55] Plaintiff argued that benefits should be awarded because Dr. Metoyer's opined nonexertional limitations preclude gainful employment. However, even if the ALJ erred when analyzing Dr. Metoyer's opinion, the Court finds that the conflicting medical evidence relating to Plaintiff's mental health does not clearly establish disabling nonexertional limitations permitting the Court to award benefits at this time. Therefore, the ALJ must reassess Plaintiff's nonexertional limitations.

[56] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

[57] The record must clearly identify what medical records the examiner reviewed.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

functional abilities. The ALJ is to then reconsider the medical evidence, Plaintiff's symptom reports, and reevaluate the sequential process.

## V.  Conclusion

Plaintiff establishes the ALJ consequentially erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4. This matter is **REVERSED and REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

5. The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 29th day of December 2022.

s/Edward F. Shea<br>
EDWARD F. SHEA<br>
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18